UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM B.,

           Plaintiff,

      v.                                                                                         **DECISION AND ORDER**
                                                                                                       20-CV-6511S
COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____


      1.      Plaintiff William B.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits under Title II and for supplemental security income under Title XVI of the Act. (Docket No. 1.) The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff filed his application with the Social Security Administration on November 16, 2016. (R.[2] at 62.) Plaintiff alleged disability beginning on January 1, 2015, due to hernia, bad back, PTSD, bipolar disorder, and vertigo. (R. at 64-65.) Plaintiff's application was denied, and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). On April 26, 2019, ALJ T. Kim held a hearing, at which Plaintiff, represented by his attorney, appeared and testified. (R. at 39-54.) Vocational Expert Susan Rowe also appeared and testified by telephone. At the time of the hearing,

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by his first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

Plaintiff was 47 years old, with a twelfth-grade education plus some college and prior work as a delivery person, sales associate, and stocker. (R. at 260.)

3. The ALJ considered the case *de novo* and, on May 24, 2019, issued a written decision denying Plaintiff's application for benefits. (R. at 19-34.) On June 18, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on July 16, 2020, challenging the Commissioner's final decision.[3]

4. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 12, 14.) Plaintiff filed a response on May 14, 2021 (Docket No. 15), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[3] The ALJ's May 24, 2019, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

3

>  mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2015, his alleged onset date. (R. at 22.) At step two, the ALJ found that Plaintiff has the severe impairments of bipolar II disorder, post-traumatic stress

4

disorder, asthma, seizure disorder, lumbar radiculopathy, and adjustment disorder with depressed mood. (Id.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 23.)

11. Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work, except he

> can occasionally push or pull or operate foot controls with both lower extremities. … can frequently kneel, crouch, stoop, balance, and crawl, and can frequently climb stairs and ramps. …can never climb ladders, ropes and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. … can have occasional exposure to dust, mists, gases, noxious odors, fumes, pulmonary irritants, and poor ventilation. [He] can tolerate occasional exposure to humidity and vibration. He is able to understand, carry out, and remember simple instructions, and make simple work related decisions. He can occasionally deal with supervisors, co-workers, and the public, as well as occasionally deal with changes in a routine work setting. [He] will be off task 10% of the workday.

(R. at 25.)

12. At step four, the ALJ found that Plaintiff is not able to perform any past relevant work. (R. at 32.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Id.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 34.)

13. Plaintiff argues that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to consider his vertigo as a severe impairment and because the ALJ did not properly evaluate the opinion evidence of record. Defendant argues that the ALJ's decision is supported by substantial evidence.

5

14. Plaintiff first argues that the ALJ erred in not finding that his vertigo was a severe impairment. An impairment or combination of impairments is "severe" at Step Two if it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). In contrast, an impairment is "not severe" if the medical evidence clearly establishes it has no more "than a minimal effect on an individual's physical or mental ability to do basic work activities[.]" SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985); accord SSR 96-3p, 1996 WL 374181, at *1-2 (July 2, 1996).

15. "The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe." Tanner v. Comm'r of Soc. Sec., No. 515CV577TJMATB, 2016 WL 3189754, at *4 (N.D.N.Y. May 11, 2016), report and recommendation adopted, No. 515CV577TJMATB, 2016 WL 3190227 (N.D.N.Y. June 7, 2016) (citing Hamilton v. Astrue, No. 12-CV-6291, 2013 WL 5474210, at *10 (W.D.N.Y. Sept. 30, 2013)). Further, "[u]nless [a claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least [twelve] months." 20 C.F.R. § 404.1509. "It is the [Plaintiff's] burden to show at step two that [s]he has a 'severe' impairment or combination of impairments[.]" James C. v. Comm'r of Soc. Sec., No. 2:19-CV-38, 2020 WL 103813, at *4 (D. Vt. Jan. 9, 2020) (citing 20 C.F.R. § 404.1520(c)). "A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." Barry v. Colvin, 606 Fed. App'x. 621, 622, (2d Cir. 2015) (summary order) (citing Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012)).

6

16. Here, the only mentions of vertigo in the record are Plaintiff's self-reporting. (See, R. at 46, 278, 371.) His treatment providers did not describe any limitations caused by vertigo during Plaintiff's course of physical therapy in 2016. (R. at 371-81.) Nor did Plaintiff complain of vertigo or receive treatment for vertigo-caused limitations at his 2016 consultations with neurologist Dr. Philip Vitticore (R. at 392-395), at his independent medical examination with Dr. Gilbert Jenouri on January 28, 2017 (R. at 406-09), or at multiple visits with treating physician Dr. James Fennelly. (R. at 416-443.) Plaintiff has not met his burden of showing that vertigo significantly limited his ability to do basic work activities, see 20 C.F.R. § 404.1520(c). The ALJ therefore did not err in not finding vertigo to be a severe impairment.

17. Plaintiff next argues that the ALJ did not give proper consideration to the medical opinions of record and improperly formulated an RFC after giving limited weight to all the opinions of record. RFC is "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2). It is the claimant's burden to demonstrate limitations that preclude any substantial gainful activity. See 42 U.S.C. § 423 (d)(5)(A); 20 C.F.R. §§ 404.1512 (a), 416.912 (a); 404.1545 (a)(3); 416.945 (c); see also Bowen, 482 U.S. at 146 n.5 (describing burdens). In determining whether this burden is met, the ALJ assesses the claimant's RFC based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1545 (a)(1), 416.945 (a)(1). Such evidence includes, inter alia, objective medical evidence, medical opinions, medical history, clinical findings, and the claimant's own assessment of limitations. 20 C.F.R. §§ 404.1513 (a)(1)-(5); 416.913 (a)(1)-(5).

18. While medical opinions provide important insights regarding on a claimant's functioning, it is ultimately the ALJ's task to formulate an RFC assessment based on the record as a whole. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as ... your residual functional capacity ... the final responsibility for deciding these issues is reserved to the Commissioner."). "Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [or she is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 F. App'x. 53, 56 (2d Cir. 2013). A court will "defer to the Commissioner's resolution of conflicting evidence, and accept the weight assigned to the inconsistent opinions as a proper exercise of the ALJ's discretion." Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018).

19. Plaintiff's argument that the ALJ improperly "crafted an opinion based on his own lay opinion rather than substantial evidence" because he gave diminished weight to all the opinions of record is unavailing. It is the ALJ's task to formulate an RFC based on the record as a whole, and the ALJ was not required to base its RFC on the opinion of any one provider. See Matta, 508 F. App'x. at 56.

20. Plaintiff's argument that the ALJ did not properly weigh or explain his reasoning regarding the opinions of record is also unavailing. A treating physician's opinion is entitled to controlling weight in cases where that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The reasons for denying a physician's opinion controlling weight must be set forth in the ALJ's

opinion. Id. When a medical opinion is not given controlling weight, the ALJ determine what weight to give it, considering (1) the examination and treatment relationship, including its length, nature, and extent; (2) the supportability of the opinion; (3) the consistency of the opinion with the record as a whole (4) the specialization of the medical source; and (5) other factors, such as the source's knowledge of disability programs and his or her familiarity with the case record. 20 C.F.R. §§ 404.1527(c), 416.927(c). An ALJ should consider the opinions of nonmedical sources based on the same factors. See Williams v. Colvin, No. 15-CV-1619-FPG, 2016 WL 1466562, at *4 (W.D.N.Y. Apr. 14, 2016). As with medical sources, an ALJ is "free to conclude" that the opinions of other treatment providers are "not entitled to any weight," but the ALJ must explain that decision. Rivas v. Berryhill, No. 1:17-CV-05143 (ALC), 2018 WL 4666076, at *10 (S.D.N.Y. Sept. 27, 2018).

21.    Here, Plaintiff argues that the ALJ improperly gave little weight to the opinions of his primary care physician Dr. James Fennelly and his counselor Jonathan Durst. The record contains treatment notes from Plaintiff's meetings with Dr. Fennelly from 2016 to 2019. On February 3, 2017, Dr. Fennelly noted that Plaintiff's bipolar was "stable" and Plaintiff was continuing with his current medications. (R. at 419.) On May 11, 2017, Plaintiff was experiencing mood swings, his mood was down and his affect flat, though he was alert and oriented and his speech was goal oriented, nontangential and nonpressured. (R. at 421.) Dr. Fennelly considered Plaintiff's mood symptoms only under fair control but continued his current medications. (Id.) On August 11, 2017, Plaintiff had discontinued his mental health medications and told Dr. Fennelly he was thinking more clearly without medication. (R. at 425.) Dr. Fennelly noted that Plaintiff reported an

improved mood. (R. at 427.) On December 11, 2017, Dr Fennelly noted that Plaintiff was still off his psychiatric medications and noted that Plaintiff's mental health was "stable." (R. at 433.) On June 13, 2018, Plaintiff filled out a mental health questionnaire, stating that he had not experienced depressive symptoms in the past two weeks. (R. at 436.) Dr. Fennelly noted that Plaintiff had been managing his bipolar disorder well with exercise and therapy. (R. at 438.)

22. On October 8, 2018, Dr. Fennelly wrote a letter on Plaintiff's behalf. He stated that Plaintiff had difficulty with focus and concentration, was unable to follow directions, unable to complete simple and complex tasks, and unable to attend work or perform job tasks when depression was severe. (R. at 469.) Dr. Fennelly opined that Plaintiff's conditions would significantly limit his ability to engage in meaningful employment. (Id.)

23. The ALJ gave limited weight to Dr. Fennelly's opinion, finding it inconsistent with the record. (R. at 30.) The consistency of an opinion with the record as a whole is a valid factor for an ALJ to consider. 20 C.F.R. §§ 404.1527(c). The ALJ found that Dr. Fennelly's opinion about Plaintiff's inability to concentrate were inconsistent with evidence of his memory, activities of daily living, ability to recall items during a mental exam, and his usual alert and oriented nature upon physical examinations. (R. at 31.) The record shows that at a mental status examination on January 24, 2017, Plaintiff reported only occasional hyperactivity and depression, and had intact memory, good insight and judgment, and a coherent and goal-directed thought process, with attention and concentration intact. (R. at 383-85.) Plaintiff's activities of daily living included driving, shopping, preparing food, caring for his children, going to church and sporting events,

and playing video games. (R. at 277-79.) Dr. Fennelly's statements that Plaintiff was unable to concentrate and unable to follow directions are not reflected in his own clinical observations or in other evidence in the record. (R. at 469, 490.) Given these inconsistencies, the ALJ did not err in giving Dr. Fennelly's opinion only little weight.

24.   Plaintiff also argues that the ALJ erred in giving little weight to the opinion of Licensed Mental Health Counselor Jonathan Durst. The ALJ gave little weight to Durst's opinions, finding them inconsistent with the record. (R. at 30.) Durst wrote a letter on Plaintiff's behalf on August 30, 2018. He stated that he had treated Plaintiff since 2010. (R. at 413.) He diagnosed Plaintiff with bipolar II disorder and PTSD. (Id.) Durst stated that Plaintiff experienced swings in emotions, with depressive moments leaving him unmotivated and lethargic and hypomanic episodes leading to impulsivity and agitation. (Id.) Durst opined that Plaintiff was a "good candidate for disability." (Id.)

25.   On April 10, 2019, Durst filled out a mental health questionnaire. He opined that Plaintiff had mild limitations in his ability to understand, remember or apply information and interact with others, a moderate limitation in his ability to concentrate and maintain pace, and a marked limitation in his ability to manage himself. (R. at 479.) Durst wrote that his suggested treatment was counseling with psychotropic drugs to maximize clinical results. (R. at 476.) On a medical source statement form, filled out the same day, Durst opined that Plaintiff had at most moderate limitations in his ability to make judgments on simple and complex work-related decisions and mild limitations in his ability to understand, remember, and carry out both simple and complex instructions. (R. at 483.)

26.   The ALJ did not err in finding that Durst's opinions were not consistent with the record as a whole. Plaintiff's treating physician Dr. Fennelly regularly noted that

Plaintiff was pleasant and cooperative, with normal speech, and in no acute distress. At an independent medical exam on January 24, 2017, Plaintiff reported only occasional hyperactivity and depression, and had intact memory, good insight and judgment, and a coherent and goal-directed thought process, with attention and concentration intact. (R. at 383-85.) In December 2017, Dr. Fennelly noted that Plaintiff was stable and had discontinued his medications. (R. at 423, 425.) As noted above, Plaintiff's activities of daily living included driving, shopping, preparing food, caring for his children, going to church and sporting events, and playing video games.  (R. at 277-79.)  Consistency with the record is a factor an ALJ must consider in assessing the weight to give an opinion. The ALJ here did not err in considering this factor and finding Durst's opinion inconsistent with other evidence in the record.

27. As for Durst's opinion that Plaintiff was a "good candidate for disability," this is a question reserved to the Commissioner, and as such, was not entitled to any weight. "Statements on issues reserved to the Commissioner," including statements that a claimant is or is not disabled, are to be treated as "evidence that is neither valuable nor persuasive," and are exempted from the multi-factor analysis for medical opinions. "evidence that is neither valuable nor persuasive." Amanda L. v. Kijakazi, No. 20-CV-1289L, 2022 WL 170604, at *3 (W.D.N.Y. Jan. 18, 2022) (quoting 20 C.F.R. §§ 404.1520b(c)(3)(i)). See also Taylor v. Barnhart, 83 Fed. App'x 347, 349 (2d Cir. 2003) (physician's opinion that a claimant is disabled is "not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner").

28. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate

12

discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No.12) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:  January 31, 2022
        Buffalo, New York

                                                s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                United States District Judge